JACOBS ET AL. *v.* KLAWANS ET AL., EXECUTORS

[No. 236, September Term, 1960.]

*Decided April 11, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*W. Harvey Beardmore,* with whom were *Rouse & Morton* on the brief, for the appellants.

*Emanuel Klawans* for the appellees.

PRESCOTT, J., delivered the opinion of the Court:

As a result of a hearing on motion for a summary judg-

ment, the appellees obtained a judgment against the appellants for rent allegedly due under a lease and the cost of documentary stamps used in recording the lease.

On January 2, 1953, the parties hereto entered into a written lease for a term of ten years. This agreement, in pertinent part, provided that "The lessees shall have no power to assign or sublet the whole or any part of the lease or premises or store fixtures without first obtaining the written consent of the lessors, their heirs and assigns * * *" and that the "lessees agree to pay all state and federal documentary stamps upon this lease or transfer."

On March 21, 1959, the appellants desired to sublet the premises subject to the lease, and submitted to the appellees the name of a proposed sublessee, who was ready, willing and able to become such sublessee. The appellees refused to permit the subletting. Thereafter, several other names were submitted as prospective sublessees. The appellees declined all of them. For the purposes of this case, we shall assume that the appellees refused to agree to the subletting for personal reasons, only.

Irked by what they thought was unreasonableness on the part of the appellees, the appellants consulted legal counsel regarding their rights. They were advised that the lease had not been recorded among the land records, and, therefore, the instrument created only a tenancy from year to year. Accepting this advice as being correct (but see Code [1957], Article 21, Section 1), the appellants, on September 28, 1959, served written notice of termination of the tenancy, effective as of December 31, 1959.

On October 5, 1959, the appellees recorded the lease among the land records and presented the appellants with a bill for the cost of state documentary stamps, which the appellants refused to pay.

Thereafter, the appellees instituted this suit for April and May, 1960, rental payments and for the cost of the state documentary stamps, and filed a motion for a summary judgment. The appellants filed general issue pleas and an answer to the motion for a summary judgment. Subsequently, the

appellants filed a "counter claim for declaratory judgment," in which they raised the same questions they present on this appeal. The trial judge rendered judgment in favor of the appellees for the rent due for April and May of 1960, plus the cost of the state documentary stamps, and the appellants appealed.

Two questions are raised. The appellants claim: (1) that notwithstanding the provision in the lease that the lessees shall not have the power to assign or sublet without first obtaining the written consent of the lessors, the lessors cannot, arbitrarily, withhold such consent; and (2) that the lease is null and void.

I

This precise question does not seem to have reached this Court on any former occasion;[1] and, although it, apparently, has not been passed upon in a great number of jurisdictions, the decisions of the courts that have determined the question are in very substantial accord. Basing the decisions, for the main part, on the grounds that restraints on the alienation of property interests are justified if the objectives behind the imposition outweigh the social evils which flow from the enforcement of the restraint, or that the interference with the power of alienation is so insignificant that no appreciable harm results from the enforcement of the restraint, the lessor's right to refuse consent, even though his refusal be arbitrary and unreasonable, has generally been upheld, where the covenant prohibiting assignment or subletting has been without qualification; but such covenants, being restraints on alienation, are not favored at law and have been strictly construed. *Coulos v. Desimone,* 208 P. 2d 105, 109 (Wash. 1949); *Gruman v. Investors Diversified Services,* 78 N. W. 2d 377, 379 (Minn. 1956); *Abrahamson v. Brett,* 21 P. 2d 229, 232 (Ore.); *Richard v. Degen & Brody, Inc.,* 5 Cal. Rptr. 263, 269 (Cal. App. 1960); *Friedman v. Thomas J. Fisher & Co.,* 88 A. 2d 321 (Mun. Ct. App., Dist. Col.);

---

1. But compare, Reid v. John F. Weissner Brewing Co., 88 Md. 234, 40 A. 877.

*Muller v. Beck,* 110 A. 831 (NJL); *Durand v. Lipman,* 1 N.Y.S. 2d 468.

The encyclopedias and text writers, likewise, recognize the rule as it has been stated above. In 51 C.J.S., *Landlord and Tenant,* § 36, it is stated: "However, where a subletting or assignment of the leased premises without the consent of the lessor is prohibited, he may withhold his assent arbitrarily * * *, unless * * * the lease provides that consent shall not be arbitrarily or unreasonably withheld, * * *." See also 32 Am. Jur., *Landlord and Tenant,* § 397; Restatement, *Property,* § 410; 1 *American Law of Property,* § 3.58, p. 305. And Professor Powell, even though he predicts that the time may soon come when the allowance of lease clauses forbidding assignments and subleases will be curtailed by statute, states that the law at present permits a lessor to "insert in his lease as stringent a clause restricting alienations of the term as he can persuade the lessee to accept." 2 Powell, *Real Property,* pp. 308, 309.

We agree with the rule as it has been stated above, thinking that the right of the lessor to select a lessee of his own choosing to occupy and use his property offsets, if it does not outweigh, any evils flowing from the enforcement of the restriction on alienation, and that such restriction is in many cases, especially when the duration of the lease is short, of minor importance; and we hold that the appellees in the instant case had a right to refuse giving their consent to the subletting, even if we assume that such consent was withheld arbitrarily and unreasonably.

## II

The appellants raise their second question in this manner. They state that prior to 1951 a lease for a term of more than seven years was required to be recorded by the Code (1939), Article 21, Section 1, in order to be effective, even as between the parties. They claim further that the title of Chapter 565 of the Acts of 1951, which purported to change the law so as to make unrecorded leases of more than seven years valid as between the parties, was misleading, and that ren-

dered the statute (hereafter referred to as the Act) unconstitutional and void.

Therefore, say the appellants, that as the Act was unconstitutional, the lease herein created only a tenancy from year to year,[2] which had been seasonably terminated, and, consequently, the appellees were not entitled to the judgment rendered below. In the view that we take of this contention, a determination of the constitutional question posed will dispose of it.

Section 29 of Article III of the Constitution of Maryland provides, among other things, that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; * * *." This provision has been invoked in many cases brought to this Court, and we have repeatedly stated, and restated, the purpose and objective of the requirement that the subject "shall be described in its title." Succinctly, they are to inform the legislators and the public of the general nature of the subject-matter of pending legislation, so that, if interested, they will examine the body of the statute for its specific provisions. Among the many cases so holding, see *Neuenschwander v. Wash. Sub. San. Comm.*, 187 Md. 67, 48 A. 2d 593; *Bell v. Board of County Com'rs of Prince George's County*, 195 Md. 21, 72 A. 2d 746; *Leonardo v. Board of County Com'rs of St. Mary's County*, 214 Md. 287, 298, 299, 134 A. 2d 284.

The cases that have arisen under the provision last quoted may generally be divided into two categories: those wherein it was contended that the title was not sufficiently descriptive; and those wherein it was claimed to be misleading. *Bell v. Prince George's County, supra.* The appellants do not challenge the title as not having been sufficiently descriptive, but earnestly contend that it was misleading.

The following is the title to the Act:

"AN ACT to repeal and re-enact, with amendments, Section 1 of Article 21 of the Annotated Code

---

2. Citing Darling Shops Delaware Corp. v. Baltimore Center Corp., 191 Md. 289, 60 A. 2d 669 and Kikas v. Baltimore County, 200 Md. 360, 89 A. 2d 625.

of Maryland (1939 Edition), title 'Conveyancing', sub-title 'Conveyances in General', as amended by Chapter 507 of the Acts of 1949, providing for recordation of certain leases."

The contention of the appellants, now stated a little more specifically, is that the Act of 1951 was an amendatory statute, and, although they concede that if the title to the Act had merely referred to the Article and Section numbers of the Code, it would not have been misleading, it did more and stated the purpose of the amendment was to provide "for the recordation of certain leases," yet an examination of the body of the Act (they say) discloses that its amendatory provisions provide "for the effect of *failing* to record leases." In other words, they admit that the title to an amendatory statute need not set out the nature of the changes to be made (provided, of course, that it names the article or section of the Code to be amended), but argue that if it does, the body of the act may not contain any other matter, however germane it may be to the subject of the original act as a whole. There are very respectable and numerous decisions that support this proposition of law. See the cases collected in 1 Sutherland, *Statutory Construction* (3rd ed.), § 1908, n. 16.

But if we accept, without deciding, this to be a correct exposition of the law, we do not think its application to the situation we have in the instant case renders the statute invalid. In this State, as a result of the explicit commands of Article III, Section 29, no laws are revived or amended by reference to their titles or sections only, and when any article or section in the Code is amended, the statute is enacted as the new article or section will read after amendment. Without setting it forth *in toto,* the body of the Act here involved first re-enacts the provision of the previous statute to the effect that no estate of inheritance or freehold, or any declaration or limitation of use, or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed and recorded as therein provided. This portion of the Act made no amendatory provisions. The Act then excepts from its operation leases for not more than seven

years which contain (under certain circumstances) options to renew for terms of not more than seven years. This provision clarifies and defines what is a lease of above seven years, within the meaning of the prior provision; and it definitely changes the pre-existing law in relation thereto. Here, the Act definitely deals with, and pertains to, the recordation of certain leases. The Act then adds the proviso which the appellants contend renders the title misleading. It provides that if a lease of above seven years be executed but not recorded, it shall be valid and binding as between the original parties to the lease. This proviso, of course, was not in the previous statute.

This Court has stated on numerous occasions that Section 29, of Article III, does not require the title of an act to contain an abstract of the body of the statute, nor to mention or indicate each provision in it. The title to this amendatory act states that the statute deals with conveyancing in general and provides for the recordation of certain leases, and it does so. The effect of the failure to record a lease as required by the last proviso of the Act relates to the subject of the recordation of leases, is pertinent and germane thereto, and is, we think, a natural and appropriate provision in connection with that subject. We hold that when the title to an amendatory act states the article and section of the Code which the statute is amending and gives a brief description of the general subject matter of the amendatory portion of the statute, as was done in the title here involved, it informs and apprises the legislators and public of the general nature of the subject-matter of the statute so that, if interested, they will examine the body of the act for its detailed provisions, and renders it free from constitutional objection. Cf. *Allied American Mutual Fire Ins. Co. v. Com'r of Motor Vehicles*, 219 Md. 607, 150 A. 2d 421; *Board of County Com'rs of Prince George's County v. Donohoe*, 220 Md. 362, 152 A. 2d 555.

Since Chapter 565 of the Acts of 1951 (this Act has since been amended by Chapter 404, § 1, of the Acts of 1953) is constitutional, the lease was valid and binding as between

156

the parties. The trial court was, therefore, correct in rendering judgment for the rental payments; and, as the lessees explicitly agreed, in the lease, to pay the cost of the documentary stamps, the court was also correct in including such cost in the amount of the judgment.

*Judgment affirmed, with costs.*